**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| DANIEL ARSHAM,<br><br>    *Plaintiff*,<br><br>      v.<br><br>QUAVIOUS KEYATE MARSHALL, and<br>JOHN DOES 1-5,<br><br>    *Defendants*. | Civil Action No. 25-cv-2668<br><br>**FIRST AMENDED COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Daniel Arsham ("Plaintiff" or "Mr. Arsham"), by his attorneys, Jayaram PLLC, as and for his First Amended Complaint against Defendants Quavious Keyate Marshall p/ka/ Quavo (individually, "Quavo") and John Does 1-5 (collectively, "Defendants"), states as follows:

**NATURE OF THE ACTION**

1. This is a copyright infringement and right of publicity case brought by artist Daniel Arsham against hip-hop artist Quavo, who used his artwork without consent in a music video.

2. Mr. Arsham is a New York based visual artist. He exhibits his work in galleries, fairs, and museums around the world. He is one of the most well-known contemporary artists in the world. He is the creator and copyright owner of many works of visual art, including the sculpture titled *Quartz Eroded 1961 Ferrari GT* (2018) (the "Artwork").

3. Without Plaintiff's consent and without his knowledge, Quavo participated in and approved the creation of a video which prominently featured the Artwork (the "Infringing Video") to promote Quavo's music.

4.      In addition, Quavo, also without authorization, caused the Infringing Video to be posted on various social media accounts and tagged Mr. Arsham to capitalize on his good name and reputation for his own financial gain.

5.      Below, left, is the Artwork. Below, right, is a still image from the Infringing Video.

| The Artwork | The Infringing Video |
| --- | --- |
|  | |

6.      Upon information and belief, Quavo approved the inclusion, placement, and prominence of the Artwork within the Infringing Video, including its visual depiction as a central element of the filmed content.

7.      Upon information and belief, the Infringing Video was filmed, recorded, edited, and distributed by individuals and entities acting at Quavo's direction or with his approval, including John Does 1–5.

8.       The Infringing Video prominently displays the Artwork's distinctive sculptural features, including its eroded surfaces and exposed crystalline elements, and captures those features in a manner that reproduces and publicly displays the Artwork.

9.      At no time did Quavo seek or obtain authorization from Plaintiff to reproduce, display, distribute, or otherwise exploit the Artwork.

10.      Mr. Arsham seeks damages and injunctive relief for direct, contributory and vicarious copyright infringement, arising from (i) unlawful use of a copy of his Artwork in

2

violation of the United States Copyright Act, 17 U.S.C. § 101 *et seq.* (the "Copyright Act"); and (ii) use of Arsham's name in violation of New York Civil Rights Law § 50 and § 51.

## PARTIES, JURISDICTION, AND VENUE

11.    Mr. Arsham is a resident of New York, New York.

12.    Upon information and belief, Defendant Quavious Keyate Marshall is an individual residing in Atlanta, Georgia, and who has both continuous and systematic contacts with the State of New York.

13.    Upon information and belief, Defendants John Does 1–5 are one or more individuals or entities who participated in, facilitated, encouraged, and/or had supervisory authority over the creation, production, filming, editing, and/or distribution of the infringing content described herein, and are therefore wholly or partially liable therefor.

14.    This Court has subject matter jurisdiction over Counts I, II and III pursuant to 17 U.S.C. § 501 (copyright infringement), 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1338(a) (acts of Congress relating to copyrights).

15.    Count IV, which alleges a violation of the right of publicity, arises out of substantially the same facts as Counts I and II, and therefore this Court has supplemental jurisdiction over Count IV pursuant to 28 U.S.C. § 1367.

16.    This Court has personal jurisdiction over Quavo because he regularly transacts and solicits business in New York, has committed tortious acts within New York, and has committed tortious acts outside the state causing injury to Plaintiff within the state.

17.    This Court has personal jurisdiction over John Does 1–5 because, upon information and belief, they participated in the creation, production, and/or dissemination of infringing content that was directed to and caused harm in New York.

18.     Venue is appropriate in this district pursuant to 28 U.S.C. §§ 1391(a)-(b) because a substantial part of the events giving rise to the claims occurred in this District and because Plaintiff resides in this District.

19.     Venue is further appropriate because the infringing content was published and made available to viewers in this District, and the resulting harm to Plaintiff was suffered in this District.

**FACTUAL BACKGROUND**

**The Artwork**

20.     Mr. Arsham is a contemporary artist based in New York.

21.     Mr. Arsham is internationally recognized for his distinctive sculptural and conceptual works, which have been exhibited in leading museums, galleries, and public institutions worldwide.

22.     Mr. Arsham and his work have been featured heavily in the media, including by the *New York Times*, *The Guardian*, *Le Monde*, *Financial Times*, and numerous other publications.

23.     Mr. Arsham's work has been shown at PS1 in New York, The Museum of Contemporary Art in Miami, The Athens Bienniale in Greece, The New Museum in New York, Mills College Art Museum in Oakland, California, and the Carré d'Art in Nîmes, France, among many others.

24.     Mr. Arsham is particularly known for a body of work often described as "fictional archaeology," in which contemporary objects are reimagined as if discovered in a distant future in a partially decayed or eroded state.  Examples of Mr. Arsham's eroded works are set forth below and illustrate his signature aesthetic.

| *Arsham's Eroded Works* | |
|---|---|
|  |  |
|  |  |
|  |  |

25.     Mr. Arsham's development of his eroded aesthetic is informed in part by his childhood experiences, including his exposure to the effects of Hurricane Andrew, which influenced his artistic exploration of themes of decay, transformation, the passage of time, and geological intrusion.

26.     Works in this series commonly depict objects that appear partially disintegrated, with sections of their surfaces removed, fractured, or replaced with crystalline or mineral-like structures.

27.     These works do not merely replicate existing objects, but instead reinterpret them through a consistent artistic language that alters their structure, texture, and visual composition in ways that are original to Mr. Arsham.

28.     Mr. Arsham's eroded sculptures, including the Artwork, are widely recognizable due to their unique visual characteristics, including the combination of familiar object forms with simulated decay and crystalline intrusion.

29.     As a result of this distinctive style, viewers encountering the Artwork readily associate it with Mr. Arsham.

30.     Some of Mr. Arsham's work—including the Artwork—sell for many hundreds of thousands of dollars.

31.     Mr. Arsham also has a robust licensing market. He has licensed his fine art and design objects to several individuals and entities, collaborating with many iconic brands, including Tiffany & Co., Rimowa, and a litany of hip-hop artists, including Pharrell, Usher, Jay-Z, Gunna, The Weeknd, Nas, and others.

32.     Mr. Arsham created the Artwork in 2018. The Artwork is part of a collection of full-size vehicle sculptures that he has created in his signature "eroded" fictional archeological technique. Below are images of the Artwork from two different angles.



33.     The Artwork depicts the form of a 1961 Ferrari GT that has been extensively transformed through Mr. Arsham's eroded aesthetic. Additional images of the Artwork are attached hereto as **Exhibit A**.

34.     In the Artwork, substantial portions of the vehicle's body are intentionally altered to appear partially missing, fractured, or eroded, exposing interior voids and structural discontinuities not present in any original vehicle design.

35.     The Artwork incorporates sculpted crystalline formations that emerge from within and through the vehicle's body, including in areas where structural components would ordinarily be continuous and intact.

36.     These crystalline elements are not functional or mechanical, but are artistic additions that alter the visual and structural composition of the object.

37.     The placement, size, shape, and distribution of these crystalline formations are the result of Mr. Arsham's creative choices and are unique to the Artwork.

38.     The Artwork further includes altered and incomplete renderings of structural components, including portions of the frame, body panels, and surface contours that are intentionally distorted, removed, or reconfigured.

39.     The surface treatment of the Artwork includes textures and forms that simulate erosion and degradation, creating a visual contrast between intact and decayed portions of the sculpture.

40.     The overall composition of the Artwork reflects a deliberate balance between recognizable automotive form and transformative artistic alteration, resulting in a work that conveys the appearance of a fictional archaeological artifact.

41.     These combined elements, including the eroded surfaces, crystalline intrusions, altered structural features, and overall composition, constitute original sculptural expression that is distinct from and not present in any underlying design.

42.     These elements reflect Mr. Arsham's creative choices regarding composition, texture, material, and visual balance between intact and degraded portions of the sculpture, and are original to Mr. Arsham.

43.     The original sculptural expression in the Artwork is evident in at least five distinct categories of creative choice. First, Mr. Arsham selected the precise locations, dimensions, and character of each cavity and void — the large exposed opening in the hood, the fractured panels along the driver's side body, and the structural discontinuities at the rear quarter — none of which correspond to any feature of an actual 1961 Ferrari GT. Second, the crystalline formations that emerge from within those voids are individually sculpted artistic additions: each cluster varies in faceting, scale, orientation, and density, and their placement within the vehicle's body reflects deliberate compositional decisions about visual weight and contrast. Third, the surface treatment

8

of the sculpture — a uniform matte monochrome that unifies eroded and intact sections — is itself an expressive choice that eliminates the visual hierarchy of a functional automobile and reframes the object as archaeological specimen. Fourth, the degree and pattern of erosion is non-uniform and intentional: certain structural components are rendered intact to heighten the contrast with adjacent areas of fragmentation, creating a visual tension that is the product of Mr. Arsham's artistic judgment, not any mechanical or natural process. Fifth, the overall composition of the Artwork — the ratio of intact to eroded surface, the placement of crystalline emergence at the hood and body rather than the chassis or wheels, and the preservation of the car's silhouette as a recognizable cultural form — reflects a carefully calibrated balance between the familiar and the disintegrated that is original to Mr. Arsham and not present in, or dictated by, the underlying vehicle form.

44.    The Artwork was first exhibited publicly as part of the exhibition "3018" at Perrotin Gallery in New York in September 2018.

45.    From February to November 2023, the Artwork was also exhibited at the Petersen Automotive Museum in Los Angeles, California.

46.    Under the Copyright Act, 17 U.S.C. § 201(a), Mr. Arsham holds and owns the copyrights in the Artwork. The Artwork is an original work of authorship, fixed in a tangible medium of expression, containing substantial amounts of Mr. Arsham's original creativity.

47.    As the copyright holder, Mr. Arsham has the exclusive right under 17 U.S.C. § 106 to reproduce, make derivative works of, publicly distribute, and publicly display the Works.

48.    Additionally, the Artwork has been registered with the U.S. Copyright Office, under Reg. No. VA 2-437-445. *See* **Exhibit B** hereto.

### The Infringing Video and Posts

9

49.     On or about December 16, 2024, Quavo caused a video to be published through his Instagram account with the caption "Back To The Basics 2025!!" (the "Infringing Video"). A copy of the Infringing Video, as posted on social media, is included hereto as **Exhibit C** and incorporated herein by reference.

50.     Below is an image of the Infringing Reel.



51.     The Infringing Video prominently features the Artwork throughout its duration and uses the Artwork as a central visual element in the composition of the video.

52.     The Infringing Video is approximately 45 seconds long and includes repeated, clear, and unobstructed views of the Artwork from multiple angles.

53.     The Artwork is not incidental to the Infringing Video, but instead is deliberately staged, framed, and lit such that it is a focal point of the video.

54.     In multiple scenes, Quavo is positioned directly in front of and adjacent to the Artwork, such that both Quavo and the Artwork are simultaneously emphasized within the frame.

55.    The Infringing Video captures and displays the Artwork's distinctive sculptural features, including its eroded surfaces, exposed crystalline formations, and altered structural components.

56.    In particular, the Infringing Video includes clear and repeated views of a large exposed cavity in the hood of the vehicle, within which crystalline structures are visible.

57.    The Infringing Video further depicts irregular breaks and openings in the surface of the vehicle's body, including areas where the exterior appears partially removed or disintegrated, exposing interior voids.

58.    These features are shown under directed lighting and camera framing that emphasize the contrast between intact portions of the vehicle and the eroded and crystalline elements of the Artwork.

59.    The camera repeatedly frames the Artwork in a manner that highlights these altered features, including medium and wide shots in which the Artwork occupies a substantial portion of the frame.

60.    The Artwork appears continuously throughout the Infringing Video and is not fleeting, obscured, or background scenery.

61.    The elements of the Artwork depicted in the Infringing Video, including the eroded surfaces, exposed crystalline cavity in the hood, and altered structural features, are not present in any unmodified 1961 Ferrari GT and instead reflect Plaintiff's original sculptural expression.

62.    On the same day, Quavo, through his TikTok profile, posted the Infringing Video with the same caption "Back To The Basics 2025!!" (the "Infringing TikTok"). The Infringing

TikTok was available at https://www.tiktok.com/@quavohuncho/video/7449136792584097070.[1]
Below is a still image of the Infringing TikTok.



63.     The Infringing TikTok similarly features the Artwork prominently and reproduces the same distinctive sculptural elements described above.

64.     The next day, Quavo, through his Instagram profile, posted a series of five images that are stills of the Infringing Video or appear to have been photographed contemporaneously therewith (the "Infringing Post"). The images in the Infringing Post feature Quavo posing in front of the Work with the caption "No the engine is not in the front n the back I jus carbon the finder!" In the Infringing Post, Quavo tagged Mr. Arsham's Instagram handle, @danielarsham. Below are images of the Infringing Post.

---

[1] As of the filing of the original Complaint, the Infringing TikTok was publicly available at the URL identified herein. As of the filing of this First Amended Complaint, that video has been removed and is no longer publicly accessible.



65.    The images in the Infringing Post feature Quavo posing in front of the Artwork, which is clearly visible and prominently displayed in each image.

66.    The Infringing Post includes multiple images in which the Artwork occupies a substantial portion of the frame and is not obscured or incidental.

67. The images in the Infringing Post reproduce the same distinctive sculptural features of the Artwork described above, including its eroded surfaces, crystalline formations, and altered structure.

68. In the Infringing Post, Quavo tagged Plaintiff's Instagram handle, @danielarsham.

69. By tagging Plaintiff, Quavo identified Plaintiff as the creator of the Artwork and associated Plaintiff's name and identity with Quavo's promotional content.

70. Plaintiff's name, identity, and persona have commercial value and are closely associated with his artistic works, including the Artwork.

71. The tagging of Plaintiff's name was visible to the public and was made in connection with content promoting Quavo, his music, and his brand. By tagging Plaintiff in connection with the Infringing Content, Quavo associated Plaintiff's name and identity with Quavo's promotional activities. The use of Plaintiff's name in this manner suggests to viewers that Plaintiff is affiliated with, endorses, or is otherwise connected to Quavo and the Infringing Content.

72. Plaintiff did not consent to the use of his name or identity in connection with the Infringing Content or any promotion of Quavo, his music, or his brand.

73. Upon information and belief, Quavo used Plaintiff's name and identity for purposes of trade and commercial advantage, including to increase engagement, credibility, and visibility of the Infringing Content.

74. As a result of Quavo's unauthorized use of Plaintiff's name and identity, Plaintiff has suffered injury to his reputation and goodwill.

75. The Infringing Video, Infringing TikTok, and Infringing Post (together, the "Infringing Content") elicited overwhelming public notice and comment, including several

14

thousands of "likes" and comments. The Infringing Content has also been shared extensively on social media.

76. The Infringing Content was used to promote Quavo, his music, and his brand, and was part of Quavo's commercial social media activity.

77. As a result of the Infringing Content, Quavo derived a direct financial and promotional benefit, including increased visibility, audience engagement, and promotion of his music and related commercial activities.

78. Upon information and belief, John Does 1–5 include individuals and entities involved in the filming, direction, production, editing, publication, and distribution of the Infringing Content, including videographers, camera operators, directors, editors, and social media or digital content personnel.

79. Upon information and belief, these individuals were responsible for capturing audiovisual recordings of the Artwork, selecting camera angles and shots in which the Artwork is prominently displayed, and incorporating those recordings into the final Infringing Video.

80. Upon information and belief, John Does 1–5 further participated in preparing, uploading, publishing, and disseminating the Infringing Video and related content to social media platforms, including Instagram and TikTok.

81. Upon information and belief, in connection with such publication and dissemination, John Does 1–5 created and distributed unauthorized copies of the Artwork in audiovisual form.

82. Upon information and belief, the filming and publication of the Infringing Video was a coordinated production in which Quavo participated as the featured performer and principal creative subject.

83. Upon information and belief, Quavo exercised control over the content of the Infringing Video, including the decision to film in front of the Artwork and the manner in which the Artwork was depicted.

84. Upon information and belief, Quavo had the authority to approve or reject the inclusion of the Artwork in the Infringing Video and its subsequent publication.

85. Upon information and belief, Quavo reviewed and approved the final version of the Infringing Video prior to its dissemination to the public.

86. Upon information and belief, Quavo directed, instructed, or otherwise caused John Does 1–5 to film, capture, incorporate, publish, and disseminate footage of the Artwork in the Infringing Content.

87. Upon information and belief, Quavo's participation in the filming, approval of the content, and direction of the production and dissemination materially contributed to the creation and distribution of the Infringing Content.

88. The acts of John Does 1–5 in filming, recording, reproducing, publishing, and distributing the Infringing Content constitute direct infringement of Plaintiff's copyright in the Artwork.

89. Quavo's conduct, including his participation in the filming, approval of the content, and direction of its publication and dissemination, resulted in the unauthorized reproduction, distribution, and public display of the Artwork.

90. Upon information and belief, Quavo had actual or constructive knowledge of the infringing nature of the Infringing Content at the time it was created and disseminated.

91. As alleged above, Quavo expressly identified Plaintiff by tagging Plaintiff's social media account in connection with the Infringing Post.

92.     The tagging of Plaintiff demonstrates Quavo's awareness of Plaintiff's authorship of the Artwork and of the association between Plaintiff and the distinctive sculptural work depicted in the Infringing Content.

93.     Despite such knowledge, Quavo did not seek or obtain a license or authorization from Plaintiff to use the Artwork.

94.     By proceeding with the creation, approval, and dissemination of the Infringing Content without authorization, Quavo avoided the payment of licensing fees and other compensation that would ordinarily be required for such use.

95.     Plaintiff maintains an active licensing market for the use of his artwork in media, promotional content, and commercial collaborations, including with musicians and brands.

96.     The unauthorized use of the Artwork in the Infringing Content interferes with and diminishes the value of Plaintiff's licensing market and his ability to control the manner in which his work is presented to the public.

97.     The Infringing Content associates Plaintiff and the Artwork with Quavo and his promotional activities without Plaintiff's consent, thereby affecting Plaintiff's reputation and goodwill.

98.     Upon information and belief, Quavo's copying and exploitation of the Artwork was willful and in disregard of, and with indifference to, the rights of Mr. Arsham. On further information and belief, Quavo's intentional infringing conduct was undertaken to reap the aesthetic benefit and value associated with the Artwork. By failing to obtain Mr. Arsham's authorization to use the Artwork or to compensate Mr. Arsham for the use, Quavo avoided payment of license fees and other financial costs associated with obtaining permission to exploit the Artwork, as well as

the restrictions that Mr. Arsham is entitled to and would place on any such exploitation as conditions for Mr. Arsham's permission, including the right to deny permission.

99.    Mr. Arsham was alerted to the misuse of the Artwork on or about December 16, 2024.

100.    Shortly thereafter on or about December 20, 2024, Mr. Arsham, through his counsel, sent a cease-and-desist letter to Quavo through his representatives, including Quality Control Music, objecting to the unauthorized reproduction, publication, distribution, and public display of his Artwork. Mr. Arsham's counsel sent a follow up letter on or about January 7, 2025.

101.    Mr. Arsham's counsel sent a similar cease and desist letter to HYBE America Inc. on or about January 7, 2025.

102.    Quavo has neglected to engage in meaningful discussions with Mr. Arsham and persisted in publicly posting and distributing the Infringing Content.

103.    As a result of Quavo's actions, Mr. Arsham has been directly damaged, and is continuing to be damaged, by the unauthorized reproduction, publication, distribution, and public display of the Artwork. Quavo's actions have significantly damaged the value of the Artwork, Mr. Arsham's other works, and the value of licenses for his artworks in the relevant markets.

104.    Quavo's acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Mr. Arsham for which he has no adequate remedy at law.

## CLAIMS FOR RELIEF

### COUNT I – Copyright Infringement
*Against Defendants*

105.    Mr. Arsham repeats and realleges the allegations set forth in Paragraphs 1 through 104 of this Complaint as if fully set forth herein.

106.    As a work of visual art, the Artwork is copyrightable subject matter for which

18

copyright protection exists under the Copyright Act, 17 U.S.C. § 101, et. seq. Mr. Arsham is the exclusive owner of rights under copyright in and to the Artwork. Mr. Arsham owns a valid copyright registration for the Artwork.

107.    The acts of Defendants constitute infringement of the Mr. Arsham's copyright and exclusive rights under copyright in the Artwork in violation of the Copyright Act, 17 U.S.C. § 106.

108.    As alleged above, Quavo and John Does 1–5, without authorization, reproduced, publicly displayed, and distributed the Artwork.

109.    John Does 1–5 directly infringed Plaintiff's copyright by, inter alia, filming, recording, and creating audiovisual reproductions of the Artwork, selecting and incorporating footage depicting the Artwork into the Infringing Video, and publishing and disseminating that content through social media platforms.

110.    Quavo directly infringed Plaintiff's copyright by participating in and approving the filming of the Infringing Content, approving the inclusion and depiction of the Artwork, and causing the Infringing Content to be published and disseminated to the public through his social media accounts.

111.    Quavo's acts further included, inter alia, appearing in the Infringing Content in front of the Artwork, approving the final version of the Infringing Video, and using that content to promote his music and brand.

112.    The Infringing Content reproduces and displays protectable elements of the Artwork, including its eroded surfaces, exposed crystalline formations, and altered structural features, as described in detail above.

113.    The copying of these elements is not incidental or de minimis, but instead

19

involves the prominent, repeated, and continuous display of the Artwork as a central visual component of the Infringing Content.

114. Quavo's and John Does 1–5's acts were undertaken without Plaintiff's authorization and in violation of Plaintiff's exclusive rights under 17 U.S.C. § 106.

115. Upon information and belief, Quavo's and John Does 1–5's infringement was willful, in that they knew or had reason to know that the Artwork was created by Plaintiff and that the use of the Artwork required authorization, including as evidenced by Quavo's tagging of Plaintiff in connection with the Infringing Post

116. Upon information and belief, the foregoing acts of infringement by Defendants have been willful, intentional, and purposeful, in disregard of and indifference to Mr. Arsham's rights.

117. As a direct and proximate result of Defendants' foregoing acts, Mr. Arsham is entitled to actual damages and disgorgement of Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504.

118. Unless and until Defendants' ongoing conduct with respect to the Infringing Content is enjoined by this Court, such conduct will continue to cause irreparable injury to Mr. Arsham's legacy and the integrity of the Artwork that cannot fully be compensated for or measured in money, and Mr. Arsham is accordingly also entitled to an injunction pursuant to 17 U.S.C. § 502, prohibiting further infringement of his exclusive rights under copyright.

### COUNT II – Vicarious Copyright Infringement
#### *Against Defendant Quavo*

119. Arsham repeats and realleges the allegations set forth in Paragraphs 1 through 118 of this Complaint as if fully set forth herein.

120. As a work of visual art, the Artwork is copyrightable subject matter for which

copyright protection exists under the Copyright Act, 17 U.S.C. § 101, et. seq. Mr. Arsham is the exclusive owner of rights under copyright in and to the Artwork. Mr. Arsham owns a valid copyright registration for the Artwork.

121. As alleged above, John Does 1–5 directly infringed Plaintiff's copyright in the Artwork by filming, recording, reproducing, publishing, and distributing audiovisual content depicting the Artwork without authorization.

122. Upon information and belief, Quavo had the right and ability to supervise and control the infringing conduct of John Does 1–5, including the filming, depiction, inclusion, and prominence of the Artwork in the Infringing Content, as well as the publication and dissemination of that content.

123. Quavo exercised such control by participating in the filming of the Infringing Content, approving the inclusion and depiction of the Artwork, and approving the final version of the Infringing Content prior to its publication.

124. Upon information and belief, Quavo had the authority to approve or reject the inclusion of the Artwork in the Infringing Content and its dissemination to the public.

125. Upon information and belief, Quavo derived a direct financial and promotional benefit from the infringing conduct of John Does 1–5, including increased visibility, audience engagement, and promotion of his music and brand through the Infringing Content.

126. The Infringing Content was used as part of Quavo's commercial social media activity and served to promote his music and related business interests.

127. Upon information and belief, the prominence and repeated display of the Artwork in the Infringing Content contributed to the aesthetic appeal, visibility, and audience engagement of that content, thereby enhancing its commercial value.

128.     By reason of the foregoing, Quavo is vicariously liable for the infringing acts of John Does 1–5.

129.    The acts of Quavo constitute vicarious infringement of the Artwork's copyright and exclusive rights under copyright in the Artwork in violation of the Copyright Act, 17 U.S.C. § 106.

130.    Upon information and belief, the foregoing acts of vicarious infringement by Quavo have been willful, intentional, and purposeful, in disregard of and indifference to Mr. Arsham's rights.

131.    As a direct and proximate result of Quavo's foregoing acts, Mr. Arsham is entitled to actual damages and disgorgement of Quavo's profits attributable to the infringement, pursuant to 17 U.S.C. § 504.

132.    Unless and until Quavo's ongoing conduct with respect to the Infringing Content is enjoined by this Court, such conduct will continue to cause irreparable injury to Mr. Arsham's legacy and the integrity of the Artwork that cannot fully be compensated for or measured in money, and Mr. Arsham is accordingly also entitled to an injunction pursuant to 17 U.S.C. § 502, prohibiting further infringement of his exclusive rights under copyright.

### COUNT III – Contributory Copyright Infringement
### *Against Quavo*

133.    Arsham repeats and incorporates by reference the allegations contained in Paragraphs 1 through 132 of this Complaint as if fully set forth herein.

134.    As a work of visual art, the Artwork is copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, et. seq. Mr. Arsham is the exclusive owner of rights under copyright in and to the Artwork. Mr. Arsham owns a valid copyright registration for the Artwork.

135.    As alleged above, John Does 1–5 directly infringed Plaintiff's copyright in the

22

Artwork by, inter alia, filming, recording, reproducing, publishing, and distributing audiovisual content depicting the Artwork without authorization, including by capturing and disseminating images of the Artwork's distinctive sculptural features.

136.    Upon information and belief, Quavo had actual knowledge, or at minimum reason to know, of the infringing activity. Quavo was physically present during the filming of the Infringing Content, participated in the creation of that content, and expressly identified Plaintiff by tagging @danielarsham in connection with the Infringing Post, thereby demonstrating awareness of Plaintiff's authorship of the Artwork.

137.    Upon information and belief, Quavo further knew or had reason to know that the use of the Artwork in the Infringing Content required authorization from Plaintiff, including given the Artwork's distinctive and recognizable nature and Plaintiff's established reputation as its creator.

138.    Notwithstanding such knowledge, Quavo induced, caused, and materially contributed to the infringing conduct of John Does 1–5. Quavo participated in the filming of the Infringing Content, approved the inclusion and depiction of the Artwork, and directed or otherwise caused John Does 1–5 to capture, incorporate, publish, and disseminate footage of the Artwork.

139.    Quavo's contribution to the infringing conduct was substantial. The Infringing Content was created for the purpose of promoting Quavo's music and brand, and Quavo's participation, approval, and direction were essential to both the creation and dissemination of that content.

140.    Quavo also materially contributed to the distribution of the infringing content by causing it to be published through his social media accounts, thereby ensuring that the

unauthorized reproductions and displays of the Artwork were widely disseminated to the public.

141. Upon information and belief, John Does 1–5 acted with knowledge or reason to know that the Artwork was not owned by Quavo and that its use required authorization, including in light of its distinctive appearance and Quavo's identification of Plaintiff in connection with the Infringing Content.

142. By reason of the foregoing, Quavo is liable as a contributory infringer for the direct infringement committed by John Does 1–5.

143. The acts of Quavo constitute contributory infringements of Mr. Arsham's copyright and exclusive rights under copyright in the Artwork in violation of the Copyright Act, 17 U.S.C. § 106.

144. Upon information and belief, the foregoing acts of contributory infringement by Quavo have been willful, intentional, and purposeful, in disregard of and indifference to Mr. Arsham's rights.

145. As a direct and proximate result of Quavo's foregoing acts, Mr. Arsham is entitled to actual damages and disgorgement of the Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504.

146. Unless and until Quavo's ongoing conduct with respect to the Infringing Content is enjoined by this Court, such conduct will continue to cause irreparable injury to Mr. Arsham's legacy and the integrity of the Artwork that cannot fully be compensated for or measured in money, and Mr. Arsham is accordingly also entitled to an injunction pursuant to 17 U.S.C. § 502, prohibiting further infringement of his exclusive rights under copyright.

**COUNT IV – Violation of Right of Publicity Under New York Civil Rights Law §§ 50-51**
*Against Defendants*

147.    Arsham repeats and incorporates by reference the allegations contained in Paragraphs 1 through 146 of this Complaint as if fully set forth herein.

148.    Arsham is an acclaimed visual artist whose name is well known domestically and internationally.

149.    Plaintiff's name, identity, and persona have commercial value and are closely associated with his artwork, including the Artwork at issue in this action.

150.    As alleged above, Quavo used Plaintiff's name and identity by tagging Plaintiff's social media account, @danielarsham, in connection with the Infringing Post.

151.    The use of Plaintiff's name was public and visible to viewers of the Infringing Content and was made in connection with content promoting Quavo, his music, and his brand.

152.    By tagging Plaintiff in connection with the Infringing Content, Quavo associated Plaintiff's name and identity with Quavo's promotional activities.

153.    The Infringing Content, including the Infringing Video and Infringing Post, was used for purposes of trade and commercial advantage, including to promote Quavo's music, increase audience engagement, and enhance Quavo's brand.

154.    The use of Plaintiff's name and identity in this context falsely suggests that Plaintiff is affiliated with, endorses, or is otherwise connected to Quavo and the Infringing Content.

155.    Plaintiff did not consent to the use of his name or identity in connection with the Infringing Content or any promotion of Quavo, his music, or his brand.

156.    Upon information and belief, John Does 1–5 participated in the publication and dissemination of the Infringing Content, including content containing Plaintiff's name and identity.

157.    By reason of the foregoing, Defendants have violated Plaintiff's rights under New York Civil Rights Law §§ 50 and 51.

158.    As a direct result of Defendants' knowing violation, Mr. Arsham's goodwill and reputation associated with his name have already been injured and continue to be injured.

159.    Pursuant to New York Civil Rights Law § 50 and § 51, Mr. Arsham requests this Court enjoin Defendants from further using Mr. Arsham's name for commercial advantage. Mr. Arsham further requests damages in an amount to be determined at trial.

**WHEREFORE**, Mr. Arsham prays for judgment as follows:

A.    Declaring, pursuant to 28 U.S.C. §§ 2201 and 2202, that Defendants' unauthorized creation, duplication, public display, and distribution of the Artwork infringe Mr. Arsham's copyright, in violation of 17 U.S.C. § 501;

B.    Granting a permanent injunction prohibiting Defendants from (i) further infringement of Mr. Arsham's copyright, including further airing of, or making available to the public, the Infringing Content, and further production or transfer of the Infringing Content or any infringing images of the Artwork, including but not limited to promotional materials; and (ii) further use of Mr. Arsham's name for commercial advantage;

C.    Awarding Mr. Arsham the actual damages he has suffered in connection with damage to Mr. Arsham's reputation and the market for Mr. Arsham's works, including the Artwork, and the profits directly and indirectly attributable to the Defendants arising from the foregoing acts of copyright infringement;

D.    Awarding Mr. Arsham compensatory damages and any profits directly and indirectly attributable to the Defendants arising from the foregoing violations of Mr. Arsham's right of publicity;

E.    Awarding Mr. Arsham exemplary damages and costs;

26

F.      Awarding pre-judgment interest as allowed by law; and

G.      Awarding such further legal and equitable relief as the Court deems proper.

**JURY DEMAND**

Plaintiff, Daniel Arsham, hereby demands a trial by jury pursuant to Federal Rule of Civil

Procedure 38(b) on all issues so triable.

Dated: April 10, 2026

                                        Respectfully submitted,

                                        **JAYARAM PLLC**

                                        By: Vivek Jayaram___

                                        Vivek Jayaram
                                        Jayaram Law PLLC
                                        54 W. 21st Street, Suite 801
                                        New York, NY 10010
                                        Phone: 646-596-1322
                                        vivek@jayaramlaw.com


                                        *Counsel for Plaintiff Daniel Arsham*